LIGGETT RESTAURANT GROUP, INC v CITY OF PONTIAC

Docket No. 240495. Submitted October 15, 2003, at Detroit. Decided December 18, 2003, at 9:10 A.M.

Liggett Restaurant Group, Inc., brought an action in the Oakland Circuit Court against the city of Pontiac and the City of Pontiac Stadium Building Authority, alleging frustration of purpose as a basis for the rescission of a concessions contract and alleging unjust enrichment. The plaintiff had acquired the interests of Elias Brothers Restaurant, Inc., in a contract with the stadium authority for concession rights at the Pontiac Silverdome. The contract had provided for concessionaire payments as a percentage of gross receipts and had provided for a guaranteed minimum annual payment that was subject to reduction in proportion to the number of scheduled home games not played by the Detroit Lions. In 1990 Elias Brothers had exercised an option to extend the contract from 2000 to 2005, the last year of which coincided with the end of the Lions' tenancy at the Silverdome, and agreed to a higher percentage of gross receipts as payment for the concession rights from 1990 to 2005. The Lions, however, had stopped playing in the Silverdome after the 2001 season. The court, Fred M. Mester, J., granted summary disposition for the defendants, ruling that the plaintiff had failed to state a claim on which relief can be granted. The court also refused the plaintiff's request for an opportunity to amend its complaint. The plaintiff appealed.

The Court of Appeals *held*:

1. The doctrine of frustration of purpose is inapplicable to this case. Before a party may avail itself of the doctrine, the contract must be at least partially executory, the frustrated party's purpose in making the contract must have been known to both parties when the contract was made, and this purpose must have been basically frustrated by an event not reasonably foreseeable at the time the contract was made, the occurrence of which has not been due to the fault of the frustrated party and the risk of which was not assumed by him. In this case the plaintiff failed to establish that the possibility of the Lions missing home games in the Silverdome was not contemplated by the parties to the concessions agreement. The parties not only anticipated, but explicitly provided

for, the possibility that the Lions might miss games in the Silverdome.

2. The trial court did not err in dismissing the claim of unjust enrichment. To sustain the claim, the plaintiff needed to show that the defendants received a benefit from the plaintiff and that an inequity resulted to the plaintiff as a consequence of the defendants' retention of the benefit. In such a situation, a contract will be implied by law to prevent unjust enrichment. However, a contract cannot be implied when an express contract already addresses the pertinent subject matter. Here, there was an express provision in the parties' contract to cover the eventuality that the Lions would not play home games in the Silverdome.

3. The trial court abused its discretion by refusing to permit the plaintiff the opportunity to amend its pleadings as provided under MCR 2.116(I)(5). Under the court rule, an amendment is not justified if it would be futile. A determination of futility must be based on the legal insufficiency of the claim on its face. Because the plaintiff had yet to identify the claim in its proposed amended complaint, there was no basis for the trial court's determination that it was legally insufficient. Reassignment of the case to a different trial judge on remand is not necessary. There is nothing in the trial judge's rulings or statements to indicate that he would have difficulty putting aside previously expressed views or that reassignment is necessary to preserve the appearance of justice.

Affirmed in part, reversed in part, and remanded for further proceedings.

WHITE, J., concurring in part and dissenting in part, stated that the plaintiff properly pleaded a cause of action for rescission based on frustration of purpose and that the claim of unjust enrichment is not precluded by the contract provision relating to the minimum annual payment. The parties extended the contract and agreed to higher payments by the concessionaire on the assumption that the Lions were obligated to play in the Silverdome through the 2004-2005 season and that the Lions would do so. The contract provision on the minimum annual payment does not preclude a finding that the Lions' early departure resulted in a frustration of the purpose of the contract extension and that the defendants would be unjustly enriched if allowed to keep the higher concessionaire payments that began in 1990 despite the fact that the Lions played in only two years of the five-year extension period and the defendants received damages from the Lions for the Lions' early departure. The grant of summary disposition should be reversed and the case remanded for further proceedings on the plaintiff's claims. Judge

WHITE concurred with the majority's decision with respect to amendment of the plaintiff's complaint.

1. CONTRACTS — FRUSTRATION OF PURPOSE.

The doctrine of frustration of purpose may be applied to relieve a party of his contractual obligations where: (1) the contract is at least partially executory; (2) the frustrated party's purpose in making the contract was known to both parties when the contract was made; and (3) the purpose was basically frustrated by an event not reasonably foreseeable at the time the contract was made, the occurrence of which event was not the fault of the frustrated party and the risk of which event was not assumed by the frustrated party.

2. EQUITY — UNJUST ENRICHMENT — CONTRACTS.

A contract cannot be implied in law to prevent a claimed unjust enrichment where there is an express contract covering the same subject matter.

*Timmis & Inman PLLC* (by *Robert R. Cleary* and *Michael J. Sheehan*) for the plaintiff.

*Butzel Long* (by *Michael J. Lavoie, James A. Gray III*, and *Thomas D. Noonan*), *Mark J. Hotz*, and *Timothy Kozub* for the defendants.

Before: GAGE, P.J., and WHITE and COOPER, JJ.

COOPER, J. Plaintiff Liggett Restaurant Group, Inc., appeals as of right the February 14, 2002, trial court order granting defendants city of Pontiac and City of Pontiac Stadium Building Authority's motion for summary disposition, pursuant to MCR 2.116(C)(8). We affirm in part, reverse in part, and remand for further proceedings.

In this contract action involving the concessions in the Pontiac Silverdome, we are asked to determine whether the doctrine of frustration of purpose relieves plaintiff of its duties under the contract and whether Michigan recognizes the doctrine as a basis for contract rescission. Plaintiff alleges that its pri-

mary purpose for entering into the concessions contract was frustrated when the Detroit Lions discontinued their use of the Silverdome for home games and that rescission is therefore warranted. Because the parties' contract contains an express clause that addresses the contingency of lack of home games, we conclude that the doctrine of frustration of purpose is inapplicable in this case. Similarly, we find that plaintiff's unjust enrichment claim must fail given the existence of an express contract governing the subject matter at issue. Nevertheless, we agree that remand is necessary to allow plaintiff the opportunity to amend its pleadings.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 1975, Elias Brothers Restaurants, Inc., entered into a contract with defendant City of Pontiac Stadium Building Authority (stadium authority) to provide concessions at the Silverdome until 2000. The parties renegotiated the contract in 1990. Elias Brothers agreed to pay additional consideration for the option to extend the contract until 2005—to coordinate with the end of the Detroit Lions' sublease.[1] This option was exercised on December 1, 1998. The Detroit Lions, however, prematurely discontinued playing in the Silverdome after the 2001 football season.

Plaintiff, as the assignee or successor in interest to Elias Brothers, filed this action for rescission and

_____

[1] The additional consideration was largely in the form of increased percentages of Elias Brothers' gross receipts. Plaintiff alleged that the extra 8% they paid in gross receipts from 1990-2000 amounted to over $6 million in additional payments.

unjust enrichment. The complaint stated that the Detroit Lions' abandonment of the Silverdome frustrated the primary purpose of the agreements, and sought to recover money previously paid for the contract extension. Specifically, plaintiff alleged that the presence and tenancy of the Detroit Lions was an integral and essential assumption of the parties to the concession agreement. According to plaintiff, Elias Brothers' agreement to pay the increased percentages was based on the "mutual understanding and premise" that the Detroit Lions were obligated to play in the Silverdome for the duration of the contract extension. Because the Detroit Lions' premature departure from the Silverdome frustrated the essential purpose of the contract extension, plaintiff requested rescission of the concession agreement "and/or" the 1990 amendment. Upon rescission, plaintiff demanded restitution "of the consideration it paid to Defendants in part performance or reliance on the contract prior to the Detroit Lions' abandonment of the Silverdome."

Plaintiff also raised a claim of unjust enrichment on the basis that defendants received the benefits of the consideration plaintiff paid in exchange for the 1990 amendment. According to plaintiff, it never received the projected benefits of the 1990 amendment because of the Detroit Lions' early departure. Plaintiff further noted the fact that defendants were seeking damages for lost concession revenue in a separate action against the Detroit Lions.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(8). In pertinent part, defendants argued that they were entitled to judgment because the doctrine of frustration of purpose had not been recognized in Michigan as a basis for rescission of a

contract. The trial court agreed with defendants' argument that plaintiff's claims were deficient. In this respect, the trial court stated:

> On review of the cases that have been presented by the Plaintiff, there's no authority in Michigan that provides for rescission based on frustration of purposes. Further, under [*Tri-State Rubber & Equipment, Inc v Central States Southeast & Southwest Areas Pension Fund,*[2]] the Court says, and I quote:
>
> "The Frustration of Purpose Doctrine does not apply to errors in prediction as to future occurrences or nonoccurrences. A party cannot enter into a contract, expecting to make a profit, and then demand rescission when the deal turns out to be less lucrative than he had hoped."
>
> Thus, the rescission claim must be dismissed.

The trial court also denied plaintiff's claim for unjust enrichment on the basis that there was an express contract covering the same subject matter.

Similarly, the trial court denied plaintiff's request for leave to amend its complaint under MCR 2.116(I)(5) as an effort in futility. The trial court then entered the order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8). Plaintiff's subsequent motion for reconsideration was denied.

## II. FRUSTRATION OF PURPOSE DOCTRINE

Plaintiff initially challenges the trial court's decision to grant defendants' motion for summary disposition against plaintiff for failure to state a claim, MCR 2.116(C)(8). In particular, plaintiff argues that it prop-

---

[2] 677 F Supp 516, 520 (ED Mich, 1987).

erly set forth a claim for rescission based on the doctrine of frustration of purpose. We disagree. A trial court's grant or denial of a motion for summary disposition is reviewed de novo on appeal.[3]

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a complaint.[4] Under this subrule "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant."[5] When reviewing such a motion, a court must base its decision on the pleadings alone.[6] In a contract-based action, however, the contract attached to the pleading is considered part of the pleading.[7] Summary disposition is appropriate under MCR 2.116(C)(8) "if no factual development could possibly justify recovery."[8]

Plaintiff asserts that rescission is appropriate in this situation because its purpose for entering into the concessions contract was frustrated when the primary tenant at the Silverdome, the Detroit Lions, prematurely terminated its contract. The doctrines of frustration of purpose and supervening impossibility/impracticability are related excuses for nonperformance of contractual obligations and are governed by similar principles.[9] Frustration of purpose is generally asserted where "a change in circumstances

---

[3] *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001).

[4] *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001).

[5] *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

[6] *Id.* at 119-120.

[7] MCR 2.113(F); see also *Woody v Tamer*, 158 Mich App 764, 770; 405 NW2d 213 (1987).

[8] *Beaudrie, supra* at 130.

[9] See Weiskop, *Frustration of contractual purpose-doctrine or myth?*, 70 St John's L R 239, 259 (1996), citing Restatement Contracts, 2d, §§ 261-272, pp 309-360.

makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract."[10] Under this doctrine, however, there is not anything actually impeding either party's ability to perform.[11]

While the frustration of purpose doctrine has yet to be considered by the Michigan Supreme Court, this Court discussed the doctrine in *Molnar v Molnar*.[12] In *Molnar*, the doctrine was utilized in connection with a property settlement in a divorce case that required the husband to pay partial mortgage payments on the home where his ex-wife and minor son lived.[13] When the child passed away before his eighteenth birthday, a panel of this Court held that the father could discontinue the partial payments to his ex-wife because they were intended for the minor child's benefit.[14] According to *Molnar*, the changed circumstances fundamentally altered the parties' positions and frustrated the purpose for which the property settlement was entered.[15]

Before a party may avail itself of the doctrine of frustration of purpose, the following conditions must be present:

> (1) the contract must be at least partially executory; (2) the frustrated party's purpose in making the contract must have been known to both parties when the contract was made; (3) this purpose must have been basically frustrated by an event not reasonably foreseeable at the time the con-

---

[10] Restatement, § 265, comment a, p 335.
[11] Restatement, § 265, comment a, p 335.
[12] 110 Mich App 622; 313 NW2d 171 (1981).
[13] *Id.* at 625-627.
[14] *Id.* at 623-624, 626.
[15] *Id.* at 627.

tract was made, the occurrence of which has not been due to the fault of the frustrated party and the risk of which was not assumed by him.[16]

As noted in the Second Restatement of Contracts, "[t]he frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract."[17] Further, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made."[18]

On the record before us, we find that plaintiff has failed to establish that the event in question was not contemplated when the parties entered into the concessions agreement. Rather, a review of the contract leads us to conclude that the parties not only anticipated, but explicitly provided for, the possibility that the Detroit Lions might miss home games in the Silverdome. In particular, we note paragraph 37 in the operating phase of the parties' original contract:

> It is contemplated by the parties that the stadium shall be opened on or before August 23, 1975, in order to permit the Detroit Lions to play its full first year schedule of nine (9) home games in the stadium. In the event that the stadium is not opened, and, as a result, one or more of the home games cannot be played there, then the amount of the first guarantee minimum annual payment due on August 20, 1976, shall be reduced by the proportion that the number of such unplayed games bear to the total of nine home games scheduled to be played. *For each year of the term thereafter during which the Detroit Lions do not play at least eight (8) football games in the stadium, the guarantee minimum annual payment shall be reduced by the proportion that the number of such unplayed games fewer than*

---

[16] *Id.* at 626; see also Restatement § 265, p 334-335.

[17] Restatement, § 265, comment a, p 335.

[18] Restatement, § 265, comment a, p 335.

*eight (8) bears to the total of eight (8) games.* For the pur-
pose of this paragraph, a football game shall be considered
unplayed if it is cancelled or halted before the first half of
play is completed.[19]

The primary goal in the construction of a contract
is to honor the intent of the parties.[20] Where the con-
tractual language is clear, the contract must be
enforced as written.[21] While the parties modified this
contract in 1990, there is nothing in the 1990 amend-
ment that modified or eliminated paragraph 37 in the
original contract. Rather, the 1990 amendment pro-
vided that its modifications were effective on the date
of the amendment but that "all other terms and condi-
tions of the [August 7, 1975] Concession Contract
shall remain in full force and effect . . . ." Because the
parties expressly accounted for the instant situation
in their contract, plaintiff cannot now claim relief
under the doctrine of frustration of purpose. As such,
we need not address plaintiff's further claim that
rescission is an appropriate remedy under this
doctrine.

Accordingly, the trial court properly held that plain-
tiff failed to state a claim on which relied may be
granted.[22] While the trial court did not dismiss plain-
tiff's claim on the above stated grounds, " '[w]hen this
Court concludes that a trial court has reached the

---

[19] Emphasis added.

[20] *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d 830 (2003).

[21] *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich
362, 375; 666 NW2d 251 (2003).

[22] See MCR 2.116(C)(8).

correct result, this Court will affirm even if it does so under alternative reasoning.' "[23]

### III. UNJUST ENRICHMENT

Plaintiff next argues that the trial court erroneously dismissed its claim for unjust enrichment. We disagree. Questions of law are reviewed de novo on appeal.[24]

To sustain a claim for unjust enrichment, plaintiff needed to show that defendants received a benefit from plaintiff and that an inequity resulted to plaintiff as a consequence of defendants' retention of that benefit.[25] In such a situation, a contract will be implied by law to prevent unjust enrichment.[26] But a contract cannot be implied when an express contract already addresses the pertinent subject matter.[27] Here, there was an express provision in the parties' contract to cover the eventuality that the Detroit Lions would not play home games in the Pontiac Silverdome. Contrary to plaintiff's argument on appeal, the existence of an express contract does not merely serve to bar recovery in quantum meruit where a plaintiff relies on a breach of contract claim.[28] Thus, plaintiff is precluded

---

[23] *Lavey v Mills*, 248 Mich App 244, 250; 639 NW2d 261 (2001); quoting *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998).

[24] *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 236; 644 NW2d 734 (2002).

[25] *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

[26] *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993).

[27] *Id.*

[28] See *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 327-328; 657 NW2d 759 (2002); *Campbell v City of Troy*, 42 Mich App 534, 537-538; 202 NW2d 547 (1972).

from seeking relief under an implied contract theory.[29]

To the extent plaintiff asserts that it can raise an unjust enrichment claim against defendant city of Pontiac because the city was not a party to the contract in question, plaintiff has failed to cite any authority to support this argument. This Court will not search for law to sustain a party's position where that party neglects to cite any supporting authority for its claim.[30]

### IV. PLEADINGS

Plaintiff ultimately contends that the trial court improperly refused to permit plaintiff the opportunity to amend its pleadings as permitted under MCR 2.116(I)(5). We agree. This Court reviews a trial court's decision regarding amendment of a complaint pursuant to MCR 2.116(I)(5) for an abuse of discretion.[31]

Under MCR 2.116(I)(5), "[i]f the grounds asserted are based on subrule (C)(8), (9) or (10), the court *shall* give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."[32] Our Supreme Court has held that an amendment is not justified if it would be futile.[33] The term "shall" denotes a mandatory rather than a discretionary course of action.[34]

---

[29] See *Barber, supra* at 375.

[30] *Chapdelaine v Sochocki*, 247 Mich App 167, 174; 635 NW2d 339 (2001).

[31] *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997).

[32] Emphasis added.

[33] *Weymers, supra* at 658.

[34] *Howard v Bouwman*, 251 Mich App 136, 145; 650 NW2d 114 (2002).

In denying plaintiff's request to file a motion to amend its complaint, the trial court simply concluded that any amendment of plaintiff's complaint would be futile. While the better practice would have been for plaintiff to file a motion for leave to amend, we note that there was no basis for the trial court's decision in this instance. A determination of futility must be based on the legal insufficiency of the claim on its face.[35] Because plaintiff had yet to identify the proposed claim, there was no basis for the trial court's determination that it was legally insufficient. Accordingly, the trial court abused its discretion in this regard.[36]

With respect to plaintiff's request for reassignment of the case to a different trial judge on remand, we note that this issue is unpreserved because plaintiff failed to state this request in its statement of questions presented.[37] In any event, we find nothing in the trial judge's rulings or statements to indicate that he would have difficulty putting aside previously expressed views or that reassignment is necessary to preserve the appearance of justice.[38]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

GAGE, P.J., concurred.

---

[35] *McNees v Cedar Springs Stamping Co*, 184 Mich App 101, 103; 457 NW2d 68 (1990).

[36] *Weymers, supra* at 654.

[37] MCR 7.212(C)(5); *Preston v Dep't of Treasury*, 190 Mich App 491, 498; 476 NW2d 455 (1991).

[38] *Feaheny v Caldwell*, 175 Mich App 291, 309-310; 437 NW2d 358 (1989).

WHITE, J. (*concurring in part and dissenting in part*). I respectfully dissent from the majority's conclusion that the circuit court correctly dismissed plaintiff's complaint for failure to state a claim. I do not agree that the contract language precludes as a matter of law a claim of frustration of purpose or a claim of unjust enrichment.

Plaintiff brought its two-count complaint in November 2001, alleging frustration of purpose, as grounds for rescission, and unjust enrichment. Defendants filed a motion for summary disposition under MCR 2.116(C)(8), failure to state a claim. The motion was heard in January, 2002, and granted, solely on the pleadings, in February.

The original contract provision concerning the possibility that the Lions would play fewer than eight home games addressed the amount of the minimum annual payment due from plaintiff's predecessor. Plaintiff does not seek to be relieved of, or to reform or rescind, this provision. Under this provision, plaintiff is relieved of any minimum payment.

The 1990 contract amendment concerns, inter alia, provisions of the lease respecting the percentages of gross proceeds due defendant authority. These amounts were significantly and immediately increased by the 1990 amendment, although without the amendment the lesser amounts would have been contractually binding until 2000. Plaintiff asserts that these increased percentages were agreed upon in exchange for a provision granting plaintiff's predecessor the option to extend the contract from 2000 until 2005, the ending date of the Lions' agreement with defendants. Plaintiff claims that its predecessor paid over $6 million dollars in additional concession fees

to defendants, from 1990 until 2000, over and above those required in the original lease, in exchange for the option to extend the original lease for five years, from 2000 to 2005, until the end of the Lions' sublease. Although the option was exercised as anticipated, plaintiff received, in effect, only a two-year extension, because the Lions departed after two seasons.

The original terms of the lease were, indeed, continued. And, under those terms, plaintiff was relieved of the $100,000 annual minimum payment once the Lions left the Silverdome. However, the agreement was silent concerning the consequences of the Lions' departure before the expiration of the option term. I do not agree that the agreement, on its face, precludes application of the frustration of purpose doctrine to the instant circumstances.

Plaintiff alleged that its predecessor agreed to an increase in concession fees in exchange for an extension of the lease to a date to be co-terminus with the Lions' sublease, and that the additional payments were made on the "mutual understanding and premise that the Lions were to play their home games at the Silverdome for the entire term of such extension." In the course of negotiations, plaintiff's predecessor requested verification of the term of the Lions' obligation to the Silverdome. Plaintiff produced a letter from defendant stating:

> In conjunction with the proposed Sixth Amendment to the Concession Contract, you requested *verification as to the term the Detroit Lions were obligated to play football* at the Pontiac Silverdome. . . . Although the Sublease and License was entered into on April 23, 1973, the *30-year term began in 1975.* . . . . [Emphasis added.]

This response is consistent with plaintiff's claim that both parties to the contract amendment proceeded on the assumption, and with the intent and agreement, that the Lions were *obligated* to play at the Silverdome through the 2004-2005 season, and that they would do so.

The presence of paragraph 37, addressing the minimum annual payment and the effect on that payment of the Lions' failure to play at least eight games in the stadium, does not preclude a finding that the Lions' early departure, and defendants' decision to accept monetary compensation from the Lions, and apparently forgo whatever rights defendants may have had to seek an injunction to restrain the Lions from abandoning the Silverdome,[1] resulted in a frustration of the purpose of the sixth amendment of the concession contract.

I would hold that plaintiff properly pleaded a cause of action for rescission/frustration of purpose,[2] and the circuit court erred in granting defendants' motion for summary disposition dismissing that claim.

I also disagree with the majority's determination that the contract provision precludes an action for unjust enrichment. Plaintiff alleged that the increase in concession payments was agreed to in exchange

---

[1] Plaintiff asserts that defendants had such a right under their sublease with the Lions.

[2] The cause of action is described in the 3 Restatement of Contracts, 2d, § 377, p 224:

> A party whose duty of performance does not arise or is discharged as a result of impracticability of performance, frustration of purpose, non-occurrence of a condition or disclaimer by a beneficiary is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.

for the right to be the sole concessionaire at the Silverdome until the end of the Lions' sublease, an additional five-year period, that defendants accepted $6 million in additional payments from 1990 to 2000, and that defendants would be unjustly enriched if they are permitted to retain the entire sum under the circumstances that the Lions only played for two of the five years of the extension, and that, additionally, defendants were able to recover damages from the Lions, including damages resulting from the loss of concession revenues. I do not agree that the provision in the original concession contract precludes plaintiff's claim for unjust enrichment. As discussed above, that contract provision addresses the effect on the annual minimum payment should the Lions fail to play eight games in the Silverdome. It does not address the parties' rights and obligations in the event the Lions breach their agreement with defendants to play in the Silverdome through the 2004-2005 season.

I would reverse the grant of summary disposition under MCR 2.116(C)(8),[3] and remand for further proceedings.

---

[3] I concur in the majority's rulings with respect to plaintiff's request to amend its complaint and whether the case should be reassigned to a different judge.