# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF LARRY E. HUTCHINSON
LIVING TRUST.

THOMAS AMOR, Personal Representative of the
ESTATE OF JOY HUTCHINSON,

Appellant,

v

KAREN SCHMOKE, KARLA FRENCHI,
KAROL KROUPA, KRISTEN WILHELM and
KELLY GILMAN,

Appellees.

UNPUBLISHED
July 7, 2016

No. 326411
Manistee Probate Court
LC No. 13-000089-TV

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

In this dispute involving distribution of certain trust assets, Thomas Amor, personal representative of the Estate of Joy Hutchinson, appeals by right the probate court order granting summary disposition for Karen Schmoke, Karla Frenchi, Karol Kroupa, Kristen Wilhelm, and Kelly Gilman. We affirm.

## I. BACKGROUND

In August 1998, Larry E. Hutchinson and his wife, Joy Hutchinson, established a revocable living trust, the Larry E. Hutchinson Living Trust (hereinafter, "Trust"). The Trust named Larry as settlor and Joy and Larry as trustees. In the event that Larry predeceased Joy, the Trust created the Joy E. Hutchinson Trust for the benefit of Joy during the remainder of her life. The Trust named Appellees—Larry's adult daughters from a prior relationship—as retaining a remainder interest in the Trust after Joy's death.

Larry died in June 2004. Pursuant to the terms of the Trust, Joy became the successor trustee and the "Joy E. Hutchinson Trust" became responsible for administering and distributing the Trust's real estate, which consisted of the Family Farm and the Woodland Property. Appellees discovered the Trust and Joy's mismanagement of the Trust's assets nearly 10 years

-1-

later.  Litigation ensued, which ultimately resulted in entry of a Stipulated Settlement Order pertaining to the Trust's real estate (hereinafter, "Settlement Agreement").

Under the Settlement Agreement, the parties agreed that Joy, as trustee of the Trust, had to sell the Family Farm "pursuant to the terms of a Purchase Agreement" and convey to Appellees the Woodland Property.  With respect to the sale of the Family Farm, the Settlement Agreement provides:

> 4.  Contemporaneously with the closing of the sale of the Family Farm, the Trustee shall pay to [Appellees'] counsel . . . the sum of $30,000.00.  All remaining proceeds of the Family Farm sale, less the expenses of transferring the Woodland Property as set forth in Paragraph 6 herein, shall be distributed to Joy Hutchinson in her individual capacity and thus shall no longer be held in Trust.

The parties further agreed, upon the closing of the sale of the Family Farm, to execute a mutual release of all claims and, upon the distributions required under the Settlement Agreement, to terminate the Trust.

After Joy as trustee executed the agreed upon distributions, the probate court entered an order administratively closing the case.  Almost a year later, at which point Joy had died, Appellant filed the instant petition to reopen the litigation in order to transfer the Family Farm's mineral rights, which had not been sold under the Purchase Agreement, from the Trust to Joy's estate.

Appellant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that, under Paragraph 4 of the Settlement Agreement, Joy's estate was entitled to the mineral rights of the Family Farm.  Appellees answered the petition, agreeing that the matter should be reopened for the limited purpose of distributing the mineral rights to Appellees.  Appellees also sought summary disposition in their favor under MCR 2.116(I).

At the motion hearing, the probate court rejected Appellant's argument that the mineral rights were a "proceed" of the sale under Paragraph 4 of the Settlement Agreement such that those rights had been distributed to Joy individually.  Instead, the court found that the Settlement Agreement was silent regarding the ownership of the mineral rights, that the Trust retained the mineral rights, and that the Trust controlled resolution of the dispute.  Consequently, the probate court granted summary disposition in favor of Appellees and entered an order to that effect.

## II.  STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).  The probate court did not specify under what rule it was granting summary disposition.  The court, however, did not consider evidence outside the pleadings, i.e., it considered the complaint, the Settlement Agreement, and the Trust document, which was attached to Appellees' petition.  See *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003) (in a contract action, contracts attached to the pleadings are considered part of the pleadings); MCR 2.113(F)(1) and (2) (written instruments of public

-2-

record are part of the pleadings). Therefore, we may consider the motion under MCR 2.116(C)(8). We accept all well-pleaded factual allegations as true in a light most favorable to the nonmoving party. *Maiden*, 461 Mich at 119. If, as a matter of law, no factual development could possibly justify recovery, then the motion should be granted. *Id*. Further, if after careful review of the pleadings, it is clear that the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2). To the extent we interpret the meaning of the Settlement Agreement, review is also de novo. *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004).

## III. ANALYSIS

Appellant first claims that the probate court erred by finding that the Settlement Agreement is "silent" with respect to the distribution of the Family Farm's mineral rights. According to Appellant, the Settlement Agreement awards the mineral rights to Joy's estate. Appellant's argument relies primarily on Paragraph 4 of the Settlement Agreement. Specifically, Appellant contends that the language of Paragraph 4—"proceeds of the Family Farm sale"— grants Joy the mineral rights in her individual capacity.

Under Michigan law, principles of contract interpretation apply to our interpretation of a settlement agreement. *Id*. at 283. The primary purpose in construing a settlement agreement is discerning the parties' intent. *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007). The language used, giving it its plain and ordinary meaning, is the best indicator of that intent. *Id.* If the terms of the settlement agreement are unambiguous, then it must be applied as written and judicial construction is not permitted. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

The pertinent language of the Settlement Agreement states:

2. As soon as practically possible, the Trustee shall sell the real property legally described as follows pursuant to the terms of a Purchase Agreement attached hereto as EXHIBIT A: [the Family Farm.]

* * *

4. Contemporaneously with the closing of the sale of the Family Farm, the Trustee shall pay to [Appellees'] counsel . . . the sum of $30,000.00. *All remaining proceeds of the Family Farm sale*, less the expenses of transferring the Woodland Property as set forth in Paragraph 6 herein, *shall be distributed to Joy Hutchinson in her individual capacity* and thus shall no longer be held in Trust.

5. Contemporaneously with the closing of the sale of the Family Farm, the Trustee shall convey to [Appellees] as tenants in common, free of the Trust and free and clear of any liens or encumbrances, the real property legally described as follows: [the Woodland Property.] [Emphasis added.]

The relevant language of the Purchase Agreement states:

> Seller [Joy Hutchinson, not individually, but as Trustee of the Joy E. Hutchinson Trust under the Larry E. Hutchinson Living Trust] agrees to sell to Buyer, and Buyer agrees to purchase from Seller . . . that parcel of real estate, *excluding all oil, gas, and mineral interests*, commonly known as [the Family Farm] . . . . [Emphasis added.]

The Purchase Agreement clearly provides that the buyer will compensate the Trust for the buyer's purchase of the Family Farm's *surface rights*. In turn, the Settlement Agreement, under Paragraph 4, grants Joy, in her individual capacity, "all remaining proceeds of the Family Farm sale," which pursuant to Paragraph 2 of the Settlement Agreement, is the sale of the Family Farm pursuant to the terms of the Purchase Agreement. Reading the Settlement Agreement and Purchase Agreement together, Joy, then, was entitled to the proceeds from the sale of the Family Farm's surface rights. Neither Paragraph 4 nor any other provision of the Settlement Agreement, by its plain terms, distributes the mineral rights to Joy individually. Nor does any provision of the Settlement Agreement award Appellees those rights. Rather, our review of the Settlement Agreement as a whole confirms the probate court's finding that the Settlement Agreement is "silent" with respect to the distribution of the Family Farm's mineral rights.

Appellant, however, contends that the term "proceeds," as used in Paragraph 4 of the Settlement Agreement, should be construed broadly to include the *severance* of mineral rights from the Family Farm because, in Appellant's view, this severance is a "thing of value arising" from the sale. "Proceeds," as Appellant points out, is defined as "Issues; income; yield, receipts; produce; money or articles or other thing of value arising or obtained by the sale of property . . . ." *Black's Law Dictionary* (6th ed). Significantly, "proceeds," by definition, are derived from a "sale," which connotes the exchange of one thing of value for another. It follows that "proceeds," when read in context of the Settlement Agreement as a whole, are the buyer's consideration—here, money—for the Family Farm's surface rights. It is these proceeds, minus Appellees' attorney fee and expenses related to the conveyance of the Woodland Property, to which Joy's estate is entitled under the Settlement Agreement, and nothing more. Indeed, Appellant has not explained how the mineral rights are a "thing of value arising" from the sale. The mineral rights existed before the sale; the severance of those rights from the Family Farm's surface rights cannot reasonably be characterized as consideration for the property purchased, i.e., a "proceed." The severance of the mineral rights was incidental to the sale.

Similarly unavailing is Appellant's claim that the Settlement Agreement, when read as a whole, awards Joy's estate the mineral rights. The fact that the Settlement Agreement does not award Appellees the mineral rights and that it was intended as a global agreement intended to capture all Trust assets, does not lead to an indelible conclusion that Joy's estate was to receive the mineral rights. Further, the Purchase Agreement's reference to "her" is a reference to Joy in her capacity as trustee of the Trust, not a reference to Joy individually as Appellant contends. In

-4-

any case, even if the Purchase Agreement were referring to Joy individually, there was no sale of mineral rights and, thus, Joy was not entitled to any such proceeds.[1]

Appellant alternatively asserts that, even if the Settlement Agreement is silent regarding the mineral rights, the probate court erred by relying on the "superseded" Trust rather than holding an evidentiary hearing to discern the parties' settlement intentions. It is certainly true, as a matter of black letter law, that when a contract is ambiguous a court may look to extrinsic evidence of the parties' intent. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003). Appellant, however, overlooks pertinent law pertaining to the termination of trusts. Mainly, Michigan common law recognizes that the beneficiaries of a trust may consent to the termination of the trust, so long as continuance of the trust is *not necessary* to carry out a material purpose of the Trust. See *Rose v Southern Michigan Nat'l Bank*, 255 Mich 275, 282; 238 NW 284 (1931), overruled in part on other grounds *In re Edgar Estate*, 425 Mich 364, 366; 389 NW2d 696 (1986); *Hein v Hein*, 214 Mich App 356, 359-360; 543 NW2d 19 (1995). It follows that if a material purpose of the Trust remains, Appellees and Joy could not, as a matter of law, terminate the Trust and its provisions may be enforced.

Under Paragraph 8 of the Settlement Agreement, the parties agreed to terminate the Trust "[u]pon the distributions set forth herein[,]" meaning the distributions provided for in the Settlement Agreement. As explained, the Settlement Agreement did not distribute the Family Farm's mineral rights. Therefore, because a portion of the Trust's real property—the mineral rights—remained in the Trust subject to Appellees' remaindermen interest, a material purpose of the Trust remains to be fulfilled. Under these circumstances, Paragraph 8 of the Settlement Agreement terminating the Trust was ineffective. See *Rose*, 255 Mich at 282; *Hein*, 214 Mich App at 359-360. Consequently, because the parties' Settlement Agreement did not terminate the Trust, the probate court did not err by looking to the Trust for the limited purpose of distributing the Family Farm's mineral rights—the sole remaining material purpose of the Trust.

Affirmed.

/s/ David H. Sawyer
/s/ Michael J. Kelly

---

[1] Appellant also asserts that *Whelan v Whelan*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2014 (Docket No. 311743), is instructive, wherein this Court construed the language, "Should either party hereafter discover the existence of any property interest not provided in this Judgment of Divorce, said property should be divided equally . . . ." The panel ruled that the provision was a "catch-all provision designed to govern potential oversights or omissions from the property division." Slip op at 4. The instant language of the Settlement Agreement is substantially different from that in *Whelan* and cannot reasonably be described as a "catch-all" provision. *Whelan*, therefore, does not guide our decision.