*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ROMEO COMPUTER COMPANY, INC. and
AVANT GARDE MEDIA, LLC, doing business as
MI DIGITAL SOLUTION,

        Plaintiffs/Counterdefendants-
        Appellants,

v

CHARLES J. MORAN, JONATHAN M.
CENTALA, and DIGIMARK, LLC,

        Defendants/Counterplaintiffs-
        Appellees,

and

JOHN WALLACE,

        Defendant-Appellee.

UNPUBLISHED
March 11, 2025
12:24 PM

No. 369695
Macomb Circuit Court
LC No. 2023-000351-CB

---

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER*, JJ.

PER CURIAM.

Plaintiffs/counterdefendants Romeo Computer Company, Inc. and Avant Garde Media, LLC, doing business as MI Digital Solution (individually, RCC and MIDS; collectively, plaintiffs) appeal as of right the trial court's dismissal of their claims[1] against defendants/counterplaintiffs Charles J. Moran, Jonathan M. Centala, and Digimark LLC, and defendant John Wallace

---

[1] The order appealed from is listed as the court's January 22, 2024 order granting defendants/counterplaintiffs' motion to voluntarily dismiss their counterclaims without prejudice, as that order resolved the last pending claims. But plaintiffs do not challenge the merits of that order.

*Former Court of Appeal judge, sitting on the Court of Appeals by assignment.

(collectively, defendants).[2] We affirm the trial court's grant of summary disposition, but reverse that portion of its opinion and order denying plaintiffs the ability to file an amended complaint consistent with its prior ruling, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Moran and Centala are both former employees of RCC, which was a company "engaged in the process of providing technology solutions in the primary areas of Information Technology ('IT'), website development and e-marketing services . . . ." Moran was hired in 2013 and employed as a sales manager at RCC. Centala was hired as an e-marketing account manager in 2018.

In January 2022, Moran and Centala entered into discussions with Steven L. Eaton, president of RCC, to purchase RCC's e-marketing division. Moran made an offer with Centala and Wallace, but in June 2022, RCC sold its e-marketing business to MIDS instead. Moran and Centala attest that between January and June 2022, they worked hard to develop customers for RCC, believing they would soon own the business, and that Eaton did not inform them RCC would be selling to MIDS instead. Their employment with RCC ended that June.[3]

Following their termination from RCC, Moran and Centala formed their new company, Digimark, LLC, with Wallace. This action followed.

Plaintiffs asserted claims of common law and statutory conversion, unfair competition, tortious interference, civil conspiracy, and breach of contract. They specifically allege that Moran and Centala solicited RCC's clients to become clients of Digimark, LLC, and shared confidential information, in violation of non-compete and confidentiality agreements with RCC, ownership over which was assigned to MIDS upon the sale of RCC's e-marketing business.

When Moran began employment with RCC in 2013, he entered into a Commission Agreement with RCC containing non-compete and confidentiality provisions, which plaintiffs partially quoted within and attached to their complaint. The following provisions are relevant to plaintiffs' claims:

> **CONFIDENTIALITY.** Charles recognizes that RCC has and will have information regarding the following:
>
> - inventions
> - products
> - product design
> - processes
> - technical matters

---

[2] The court entered its opinion and order denying plaintiffs' motion for reconsideration after plaintiffs filed their claim of appeal.

[3] Plaintiffs allege MIDS offered Moran and Centala positions, which they did not accept, but Moran and Centala attest they were fired shortly after the purchase.

- trade secrets
- copyrights
- customer lists
- costs
- business affairs

and other vital information items (collectively, "Information") which are valuable, special and unique assets of RCC. Charles agrees that Charles will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without prior written consent of RCC. Charles will protect the Information and treat it as strictly confidential. A violation by Charles of this paragraph shall be a material violation of this Agreement and will justify legal and/or equitable relief.

**UNAUTHORIZED DISCLOSURE OF INFORMATION.** If it appears that Charles has disclosed (or has threatened to disclose) Information in violation of this Agreement, RCC shall be entitled to an injunction to restrain Charles from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed. RCC shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

**CONFIDENTIALITY AFTER TERMINATION OF ENGAGEMENT.** The confidentiality provisions of this Agreement shall remain in full force and effect for a 2-year period after the termination of Charles' engagement.

**NON-COMPETE AGREEMENT.** Charles recognizes that the various items of Information are special and unique assets of the company and need to be protected from improper disclosure. In consideration of the disclosure of the Information to Charles, Charles agrees and covenants that for a period of 2 years following the termination of this Agreement, whether such termination is voluntary or involuntary, Charles will not directly or indirectly engage in any business competitive with RCC. This covenant shall apply to the geographical area that includes the USA and Canada directly or indirectly engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer of RCC for the benefit of a third party that is engaged in such business. Charles agrees that this non-compete provision will not adversely affect Charles's livelihood. (v) Charles will not facilitate or encourage the hiring of RCC personnel by any other third party. Attached Non-Compete Agreement Form HR-0009 becomes a part of this agreement.

Moran also signed, the same day, an individual "Non-Compete Agreement" with RCC on Form HR-0009, which states, in pertinent part:

2. During employment with *ROMEO COMPUTER COMPANY, INC.*, the EMPLOYEE/CONTRACTOR may not, directly or indirectly, invest or engage in

any business that is competitive with that of ROMEO COMPUTER COMPANY, INC., nor will the EMPLOYEE/CONTRACTOR accept employment or render services to a competitor as a director, officer, agent, employee, or consultant. Any exceptions to this Agreement must be with prior written consent.

3. The EMPLOYEE/CONTRACTOR will serve *ROMEO COMPUTER COMPANY, INC.* in an exclusive capacity. Accordingly, as a condition of employment, the EMPLOYEE/CONTRACTOR must agree that, in the event that his/her employment/engagement terminates for any reason, for a *two* year period, the employee/contractor will not, directly or indirectly, either for himself/herself or through any kind of ownership as a director, agent, employee, or consultant, for any other person, firm, or corporation, call on, solicit, take away, or cause the loss of clients of *ROMEO COMPUTER COMPANY, INC.* on whom the EMPLOYEE/CONTRACTOR called or with whom he/she became acquainted during his/her employment/engagement immediately preceding the termination of employment/engagement. It is expressly agreed and understood that the remedy at law for breach of covenant is inadequate and that injunctive relief shall be available to prevent the breach thereof.

Plaintiffs do not reference or quote, or attach this document to, their complaint. When Centala began his employment with RCC in 2018, he too signed an identical "Non-Compete Agreement," which plaintiffs quoted and attached to their complaint.

Concurrently with the filing of their complaint, plaintiffs moved for a temporary restraining order and order to show cause why a preliminary injunction should not be issued. In response, defendants argued that the court should deny the motion because plaintiffs failed to demonstrate that they had any basis to enforce the non-compete agreements, the agreements are overly broad and unenforceable, and plaintiffs sought to enforce the wrong non-compete agreement. Ultimately, the trial court entered an order temporarily restraining defendants from soliciting plaintiffs' customers or using plaintiffs' confidential information.

In their amended answer to plaintiffs' complaint, Moran, Centala, and Digimark, LLC included a countercomplaint for breach of contract related to unpaid commission fees, unjust enrichment, and tortious interference with a business relationship. And in their supplemental briefs regarding plaintiffs' motion for a preliminary injunction and joint pretrial report, the parties argued over whether plaintiffs complied with MCR 2.113(C) by attaching the assignment of Moran and Centala's Non-Compete and Commission Agreements to the complaint, and whether Moran's individual non-compete agreement supersedes or alters the terms of the Commission Agreement.

Defendants reiterated these arguments in their motion for partial summary disposition under MCR 2.116(C)(8) and (10). More specifically, defendants argued that plaintiffs failed to plead that either has standing to sue because: (1) the contracts at issue were between Moran, Centala, and RCC, which is no longer in operation and, therefore, has no business interest to protect; and (2) plaintiffs failed to attach, to their complaint or motion, the assignment of those contracts to MIDS in accordance with MCR 2.113(C)(1). In other words, they asserted, "[s]ummary disposition is appropriate as Plaintiffs' pleadings fail to allege a claim that Plaintiff [MIDS] has standing to bring this lawsuit. Further, there is no question of fact that Plaintiff RCC

cannot enforce the Non-Compete Agreements when it is not operating, and therefore has no business interest to protect."

Alternatively, defendants argued that assuming any of the signed agreements are enforceable, the individual Non-Compete Agreements control the rights of the parties because "as specified by Moran's stand-alone Non-Compete executed on the very same day as the Commission Agreement, it governs and controls the issues address therein[.]" Further, defendants asserted, the Commission Agreement is broader than necessary to protect plaintiffs' competitive business interests in violation of MCL 445.774a.

Plaintiffs responded that they did have standing because RCC remains an active corporation, as evidenced by the LARA certificate attached to their response brief, and when MIDS purchased RCC's e-marketing business, RCC assigned its related rights under the Commission Agreement and Non-Compete Agreements to MIDS. But, plaintiffs asserted, because defendants moved for summary disposition under MCR 2.116(C)(8) and (10), they should be permitted to amend their complaint to include the Assignment from RCC to MIDS. Additionally, they directed the court to language in Moran's Commission Agreement incorporating the individual Non-Compete Agreement, and asserted specific violations. Plaintiffs attached to their response the Assignment and Assumption Agreement between RCC and MIDS.

In reply, defendants challenged the Assignment attached to plaintiffs' response, stating, "Plaintiffs continue to fail to provide any evidence of the sale of RCC's e-marketing business to [MIDS] or evidence that the contracts at issue were assigned to [MIDS]. . . . Plaintiffs attach an Assignment and Assumption Agreement that fails to identify the purportedly assigned agreements for which they seek enforcement in this matter."

At the June 20, 2023 motion hearing, the court took the partial motion for summary disposition under advisement, but orally granted plaintiffs' request to file an amended complaint with "the assignment and attached schedule," stating, "I think Michigan law is clear that requests to amend are freely granted. I'll grant that request. You can submit an order to that effect, [plaintiffs' counsel]." The court also set a date in July 2023 for a settlement conference.

In December 2023, plaintiffs moved for entry of an order granting them leave to file an amended complaint, asserting that at a July 14, 2023 hearing, the court granted their amendment request, but ordered the parties to participate in facilitation, and "[b]ecause of the order for facilitation, plaintiffs did not continue to litigate the case, but instead prepared for facilitation." There is no transcript for a July 14, 2023 hearing in the lower court or appellate record, and the register of actions for that day indicates a settlement conference was held off the record, the parties would facilitate, and the hearing scheduled for the summary-disposition motion had been adjourned. Plaintiffs' motion for entry of an order was noticed for a hearing on January 22, 2024.

Before that hearing, however, on December 20, 2023, the court issued an opinion and order granting defendants' summary-disposition motion on the basis of defendants' standing argument, and dismissing plaintiffs' complaint in its entirety. The court acknowledged RCC's LARA certificate and the Assignment attached to plaintiffs' response brief, but reasoned that the Assignment was incomplete and that plaintiffs presented no evidence regarding any overlap between RCC and Digimark, LLC's business. In summary, the court reasoned:

Defendants appear to be requesting that this case be dismissed in its entirety because MIDS has no standing and RCC has no business interest to protect. Plaintiffs have requested the ability to amend the Complaint to attach the Assignment from RCC to MIDS. However, they have not explained what business interest RCC would be protecting or how they can simultaneously retain an interest in this action while also claiming to have assigned the contracts to MIDS. While the Court granted the request to amend the record, no Order to this effect was entered by the parties and no amendment was filed.

The court subsequently denied plaintiffs' motion for reconsideration, to which plaintiffs attached the complete Assignment and Assumption Agreement between RCC and MIDS, and granted without prejudice Moran, Centala, and Digimark, LLC's motion to voluntarily dismiss their countercomplaint.

## II. ANALYSIS

On appeal, plaintiffs argue that the trial court erred in granting defendants summary disposition on the basis of standing, and in denying their request to amend the complaint.

## A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Lockport Twp v City of Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. [*Farm Bureau Ins Co of Mich v Blarney Castle Oil Co*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 364960); slip op at 2 (quotation marks and citations omitted).]

On the other hand:

A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). [*Lockport Twp*, 319 Mich App at 519 (quotation marks and citation omitted; alteration in original).]

"The issue of standing presents a question of law that is reviewed de novo on appeal. Likewise, the related issue of whether a plaintiff is the real party in interest is also a question of law that we review de novo." *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 621; 873 NW2d 783 (2015) (citations omitted).

Finally, "[t]he grant or denial of a motion for leave to amend pleadings is reviewed for an abuse of discretion." *Titan Ins v North Pointe Ins Co*, 270 Mich App 339, 346; 715 NW2d 324 (2006).[4]

## B. STANDING

Plaintiffs argue that the trial court erred by granting summary disposition on the basis that they lacked standing to sue.

> MCR 2.201(B) provides that "[a]n action must be prosecuted in the name of the real party in interest . . . ." The real party in interest is a party who is vested with a right of action in a given claim, although the beneficial interest may be with another. In general, standing requires a party to have a sufficient interest in the outcome of the litigation to ensure vigorous advocacy and "in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." Both the doctrine of standing and the included real-party-in-interest rule are prudential limitations on a litigant's ability to raise the legal rights of another. Further, "a litigant has standing whenever there is a legal cause of action." But plaintiffs must assert their own legal rights and cannot rest their claims to relief on the rights or interests of third parties. The real party in interest is one who is vested with the right of action as to a particular claim, or, stated otherwise, is the party who under the substantive law in question owns the claim asserted. [*Pontiac Police*, 309 Mich App at 621-622 (citations omitted; alteration in original).]

## 1. RCC

While the trial court acknowledged RCC may still be in business as evidenced by the LARA certificate attached to their summary-disposition response, it found that RCC lacked standing to assert its claims against defendant because plaintiffs had "not explained what business interest RCC would be protecting or how they [could] simultaneously retain an interest in this action while also claiming to have assigned the contracts to MIDS". "Agreements not to compete are permissible under Michigan law as long as they are reasonable." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 506; 741 NW2d 539 (2007) (quotation marks and citation omitted). Under MCL 445.774a(1):

> An employer may obtain from an employee an agreement or covenant which protects an employer's *reasonable competitive business interests* and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its

---

[4] Plaintiffs' assertion that defendants should have moved for summary disposition under MCR 2.116(C)(5) in their challenge to plaintiffs' standing is without merit. "This Court has viewed a claim that a plaintiff lacks standing as a motion under MCR 2.116(C)(5), i.e., that the plaintiff lacks the legal capacity to sue." *Pontiac Police*, 309 Mich App at 619. But where, as here, a defendant asserts that the plaintiff is not the real party in interest to assert claims of injury, moving under MCR 2.116(C)(8) is appropriate. *Id*. at 620-621.

duration, geographical area, and the type of employment or line of business. [MCL 445.774a(1) (emphasis added).]

As we stated in *St. Clair Med, PC v Borgiel*, 270 Mich App 260, 266; 715 NW2d 914 (2006):

> Because the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition. To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill. [Citations omitted.]

There is no doubt that if RCC assigned its rights under the contracts to MIDS, RCC lost any claims related to those contracts after any assignment, and plaintiffs do not argue otherwise. Rather, plaintiffs argue the trial "court noted that while RCC is still operating as a business, it did not see what interests it had in the underlying litigation since it had assigned its e-marketing business to MIDS . . ., despite the fact that plaintiffs had alleged that defendants Moran and Centala had breached the non-compete agreements while they were still employed by RCC and RCC was actively operating its e-marketing business."

Plaintiffs do not point to specific allegations in their complaint to support this argument. A review of the complaint reveals limited factual allegations related specifically to Moran and Centala's actions during their time at RCC. The following allegations are the most pertinent:

> 28. In December, 2021, a new RCC sales representative, David White, received a call from a representative for a potential client, who advised White that he knew that Moran was no longer with RCC and started his own digital marketing company.

> 29. White advised Eaton of this conversation on the same day, and Eaton contacted Moran, who claimed that the potential client representative must have been confused because Moran was going into the hospital for some surgery.

> 30. Eaton looked in the company's proposal system and customer relations management system and did not find any proposal for that potential client.

> 40. After Moran and Centala left RCC, RCC and MIDS discovered that Moran and Centala, while employed by RCC and using RCC's resources and relationships, had called upon existing clients of RCC to solicit them to become clients of their own new digital company.

In the affidavits attached to defendants' motion for partial summary disposition, Moran and Centala each attest that they never used RCC's confidential information or solicited any of RCC's customers. And defendants assert on appeal that in response to the motion for summary disposition, plaintiffs failed to produce evidence establishing a genuine issue of material fact that RCC had any reasonably competitive business interest to protect by enforcement of the Non-

Compete Agreements. Indeed, in their response to the motion for partial summary disposition, plaintiffs asserted that while still employed with RCC, Moran provided a digital marketing proposal to Motor City Plumbing, and later sent that same proposal to Motor City Plumbing after leaving RCC. But it is unclear from the attached proposals that defendants did as plaintiffs asserted. Accordingly, plaintiffs failed to establish a genuine issue of material fact that RCC had standing to sue defendants. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 370; 775 NW2d 618 (2009) ("If the moving party properly supports its motion, the burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists.") (quotation marks and citation omitted).

Plaintiffs argue on appeal that their proposed amended complaint includes allegations detailing RCC's interest in the claims asserted, including that Moran and Centala breached their respective agreements while still employees of RCC, but plaintiffs do not provide a record citation to any specific request for leave to amend on this basis, and we only find the proposed amended complaint with additional allegations related to RCC's interest in the lawsuit attached to their motion for reconsideration of the court's opinion and order granting defendants summary disposition. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) ("Where an issue is first presented in a motion for reconsideration, it is not properly preserved.").

## 2. MIDS

According to the trial court, MIDS lacked standing to assert its claims because the Assignment attached to plaintiffs' summary-disposition response was incomplete, and denied their request for entry of an order allowing amendment of the complaint because "[w]hile the Court granted the request to amend on the record, no Order to this effect was entered by the parties and no amendment was filed."[5]

The trial court was correct that plaintiffs failed to attach the complete Assignment and Assumption and Purchase Agreements showing that RCC assigned the Non-Compete Agreements for Moran and Centala to MIDS until they filed their motion for reconsideration, and failed to file an amended complaint with the attached complete Assignment, even after being granted the opportunity to do so at the June 20, 2023 summary-disposition hearing. Further, plaintiffs' explanation that the court ordered facilitation in lieu of further litigation, lacks merit. We see no evidence in the record that the court ordered facilitation *in lieu of* continuing litigation. Thus, on the record presented, the trial court properly granted summary disposition of plaintiffs' claims

---

[5] Additionally, over a month after plaintiffs filed their claim of appeal in this Court, the trial court denied plaintiffs' motion for reconsideration, stating:

> Plaintiffs were orally granted the opportunity to amend their complaint but failed to submit a proposed order on the date of the hearing which would have preserved their right. Plaintiffs then waited more than six months after the hearing, and three months after the end of facilitation, to rectify their oversight. This Court finds that it did not err in dismissing the Complaint when such a significant amount of time had passed without Plaintiffs taking action.

against MIDS. Nevertheless, we hold that the trial court abused its discretion by denying plaintiffs' request to amend their complaint to attach the required agreements in accordance with MCR 2.113(C)(1).

Under MCR 2.113(C)(1), "[i]f a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading . . . ." And summary disposition may be appropriate when a written instrument is not attached to a complaint in accordance with this rule. See *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003).

Plaintiffs requested leave to amend the complaint to attach the complete Assignment and Purchase Agreement, and where the grounds asserted for summary disposition are based on subrule (C)(8), (9), or (10), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). Under MCR 2.118, a party may amend a pleading at this stage of the proceedings only by leave of the court or written consent of the adverse party. MCR 2.118(A)(2). "Leave shall be freely given when justice so requires." *Id*.

Motions to amend should only be denied for "the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment." [*Legion-London v Surgical Institute of Mich Ambulatory Surgery Ctr*, 331 Mich App 364, 370; 951 NW2d 687 (2020) (citation omitted).]

Although the trial court originally granted plaintiffs' request, it later denied their motion for entry of an order to that effect within its order granting summary disposition, on the basis that plaintiffs failed to timely file the order allowing amendment or their proposed amended complaint. However, " '[d]elay, alone, does not warrant denial of a motion to amend.' " *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, 337 Mich App 360, 374; 976 NW2d 109 (2021), quoting *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997). And defendants' assertions of prejudice and bad faith fail to convince us that plaintiffs' delay here was "undue." While "the leeway granted to a plaintiff to amend a complaint 'is not a license for carelessness or gamesmanship,' " *Hamood v Trinity Health Corp*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364627); slip op at 11, quoting *Weymers*, 454 Mich at 660, defendants' argument that establishing which contracts RCC transferred to MIDS through attachment of the complete Assignment would have changed the dynamic of facilitation, does not rise to the level of prejudice necessary to overcome the liberal amendment standards set forth above. See *Wolfenbarger v Wright*, 336 Mich App 1, 24-25; 969 NW2d 518 (2021) (reasoning "there is prejudice if the amendment would prevent the opposing party from receiving a fair trial, such as, for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost") (quotation marks and citation omitted). Thus, the trial court abused its discretion by failing to allow plaintiffs to file an amended complaint along with the complete Assignment and Assumption and Purchase Agreements attached in accordance with its earlier grant of leave to amend on this basis.

The trial court's decision to grant summary disposition is affirmed, but the portion of the opinion and order denying plaintiffs the ability to file an amended complaint consistent with its prior ruling is reversed, and the matter is remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer