*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLOBAL PRODUCTS, INC.,

　　　　　Plaintiff-Appellant,

v

MAYSER POLYMER USA, INC. and MAYSER GMBH & CO KG,

　　　　　Defendants-Appellees.

UNPUBLISHED
February 14, 2019

No. 339451
Wayne Circuit Court
LC No. 15-011224-CB

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Plaintiff Global Products, Inc (GPI) appeals as of right the trial court's orders[1] granting the motions for partial summary disposition filed by defendants Mayser Polymer USA, Inc (Mayser USA) and Mayser GMBH & Co, Inc (Mayser Germany),[2] and denying its own motion for leave to file an amended complaint. For the reasons stated herein, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This action arises out of the professional relationship between GPI, an automotive sales representative, and Mayser, a manufacturer of automotive-related products. On November 17, 2010, the parties entered into an agreement entitled the Manufacturers' Representative Agreement (the Agreement), whereby GPI was to serve as exclusive sales representative for Mayser. The relevant portions of the Agreement are as follows:

---

[1] The trial court entered the order granting the motions for partial summary disposition on March 2, 2016, and the order denying the motion for leave to file an amended complaint on June 10, 2016, but GPI could not file its claim of appeal until the court entered a stipulated order dismissing the remaining claims on July 17, 2017.

[2] We will refer to defendants collectively as Mayser throughout this opinion.

**8. Compensation.** As sole compensation for [GPI's] services hereunder, including but not limited to the Other Services, [Mayser] shall pay the commissions on the fifteenth day of each month for all shipments paid for during the preceding calendar month. [GPI] is not entitled to any benefits or consideration beyond that which is set forth in this Section and Section 10.

> **(a) Compensation for Procuring the Sale of the Product.** [Mayser] shall pay to [GPI] as compensation for its services, a commission rate of five percent commission (5%) (three percent (3%) if program management is not required of [GPI]) . . . . The commission rate is negotiable prior to the finalization of the sale to insure competitive pricing is achieved with the customer. (The commission rate is to be mutually accepted, in writing, by [Mayser] and [GPI] prior to the issuance of the Purchase Orders by the customer). [GPI's] commission on sales of the Product shall extend through the life of the Product and include all reorders during the term of this Agreement. If the Agreement is terminated, [GPI] will continue to be compensated for all open purchase orders for shipments made within 12 months following the termination of the Agreement.

**14. Breach of Agreement.** [Mayser], at its election, may treat this Agreement as breached and, without prejudice to any other of its rights, may forthwith terminate this Agreement by written notice to [GPI] upon occurrence of any of the following events:

> **(a)** There is a substantial failure by [GPI] to perform one or more of its obligations hereunder which shall not have been cured within fifteen (15) business days after written notice specifying the nature of such failure;

> **(b)** [GPI] shall make a general assignment for the benefit of creditors; or

> **(c)** [GPI] or its principles become insolvent or bankrupt.

**15. Term and Termination.** This Agreement shall become effective on the date of its execution and shall remain in full force for a period of one year unless either of the parties hereto has given the other party written notice of its election to terminate this Agreement upon sixty (60) days notice, with or without cause. At the end of the original term of one year, in the absence of cancellation by either party, the agreement shall automatically renew from year to year. If either party elects not to renew the Agreement, it shall provide written notice at least sixty (60) days prior to the renewal date.

Neither GPI nor Mayser acted to end the Agreement during its initial year, but on August 25, 2014, Mayser sent GPI a letter entitled "Notice of Non-Renewal of Manufacturer's Representative Agreement," which stated, in part: "We hereby notify you that we have elected, pursuant to Section 15 of the Agreement, not to renew the Agreement at the end of the current term, which ends on November 16, 2014. As required by Section 15, this notice is given at least sixty (60) days prior to the renewal date." A subsequent letter from Mayser to GPI read: "We

will continue to fulfill our obligations in accordance with the wording of Section 8(a) of the Representative Agreement on post-termination commission payments. To be clear, we will not pay commission for any shipment made after November 16, 2015."

Unsatisfied with Mayser's declarations, GPI filed suit against Mayser alleging breach of contract and promissory estoppel, among other claims.[3] With regard to its claim for breach of contract, GPI alleged that the parties' relationship was based in whole or in part on writings,[4] that pursuant to § 8(a) of the Agreement, Mayser agreed to pay GPI commissions for the life of the products sold by GPI, and that in violation of that promise, Mayser informed GPI of its intent to cease commission payments on shipments made after November 16, 2015. Similarly, for its claim of promissory estoppel, GPI alleged that Mayser promised, by words or conduct, to pay GPI commissions for the life of the products sold, Mayser knew the promise would induce GPI to solicit sales on its behalf, and GPI acted in reliance.[5]

## II. SUMMARY DISPOSITION

In lieu of answering GPI's complaint, Mayser filed a motion for partial summary disposition pursuant to MCR 2.116(C)(8), asserting that GPI's claim for lifetime commission payments under § 8(a) of the Agreement failed as a matter of law.[6] Specifically, Mayser argued that it did not anticipatorily breach the Agreement by sending GPI notice of its intent to cease commission payments on shipments made after November 16, 2015, because its non-renewal notice served to terminate the Agreement, and the unambiguous plain language of § 8(a) provides that "[u]pon termination, GPI shall continue to receive commissions on open purchase orders for shipments made within twelve months following the date of termination."

In response, GPI asserted that "termination" and "non-renewal" are distinct concepts in the Agreement, and the one-year commission limitation in § 8(a) applies only to termination of the Agreement. Additionally, GPI argued that the court could not dismiss its case on the basis of a (C)(8) motion because, as mentioned in Paragraph 7 of the complaint, additional writings

---

[3] The other claims made are not pertinent to the issues raised on appeal.

[4] Specifically, Paragraph 7 of the complaint provides: "Upon information and belief, the parties' agreement is based in whole or in part on writings and pursuant to MCR 2.113(F) any such writings are in the possession of the adverse parties." And the next paragraph references the Agreement.

[5] GPI's breach of contract claim made additional allegations unrelated to the request for lifetime commission payments, which are not pertinent to this appeal and were dismissed by the court in its July 17, 2017 order. GPI attached to its complaint copies of the Agreement, Mayser's Notice of Non-Renewal, and Mayser's Commission Letter.

[6] Mayser USA and Mayser Germany filed separate motions for partial summary disposition, but Mayser Germany simply incorporated and relied on the facts and arguments in Mayser USA's motion and brief in support. Thus, we refer to the motions collectively as Mayser's motion for partial summary disposition.

modifying the Agreement demonstrated that Mayser had agreed to pay GPI commissions for the life of the products sold, or that, at the very least, the court should find the Agreement ambiguous.[7]

Following a motion hearing during which the court urged GPI to submit the writings that supposedly added to or modified the Agreement and entitled it to lifetime commissions, and GPI responded that it had not done so because Mayser had moved for summary disposition pursuant to MCR 2.116(C)(8), not (10), the court granted the motions. In so doing, the court determined that the word "termination" as used § 8(a) unambiguously encompassed all mechanisms for ending the Agreement, reasoning that the Agreement failed to define the term, and that the term was not capitalized throughout.[8]

## III. ANALYSIS

### A. SUMMARY DISPOSITION RULING

We agree with the trial court's determination and hold that, as used in § 8(a) of the Agreement, "termination" includes a party's decision not to renew the Agreement under § 15. Thus, GPI failed to state a claim upon which relief could be granted for lifetime commissions because Mayser did not breach the Agreement when it announced its intention to cease commission payments one year after the Agreement's end, and Mayser was entitled to summary disposition.

> This Court reviews de novo a circuit court's summary disposition ruling. A court may grant summary disposition under MCR 2.116(C)(8) if [t]he opposing party has failed to state a claim on which relief can be granted. A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. [*Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304-305; 788 NW2d 679 (2010) (quotation marks and citations omitted; alteration in original).]

However, "[w]hen an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint. Accordingly, the written contract becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8)." *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007) (citations omitted). "Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a

---

[7] Mayser USA and Mayser Germany filed separate briefs in reply to GPI's responses, arguing that the Agreement used the terms "termination" and "non-renewal" interchangeably.

[8] The court also denied GPI's motion for reconsideration.

right of recovery." *Dalley*, 287 Mich App at 305 (quotation marks and citation omitted). Additionally, "whether contract language is ambiguous is a question of law that we review de novo," as is the proper interpretation of a contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

To state a cause of action, "[a] complaint must contain '[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend . . . .' " *Dalley*, 287 Mich App at 305, quoting MCR 2.111(B)(1) (second alteration in original). And to state a claim for breach of contract specifically, a plaintiff must allege (1) the existence of a contract, (2) breach of that contract, and (3) damages as a result. *Miller-Davis Co v Ahrens Constr, Inc (On Remand)*, 296 Mich App 56, 71; 817 NW2d 609 (2012), rev'd in part on other grounds 495 Mich 161 (2014).

GPI first argues that it stated a valid claim for breach of contract because it alleged in its complaint each of the above elements—that it entered into an agreement with Mayser whereby Mayser agreed to pay lifetime commissions, that Mayser breached the agreement by announcing its intent to cease commission payments, and that it suffered damages as a result—and the trial court was required to accept these allegations as true. However, as stated above, and for the reasons that follow, we hold that the language in the agreement is clear and unambiguous, and that as used in § 8(a) and throughout the Agreement, the parties intended "termination" to include any action which served to end the Agreement. Thus, according to the allegations in the complaint—which include the contract attached to it—Mayser did not breach the Agreement, and GPI's claim for breach of contract fails as a matter of law.

"In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id*. On the other hand, "the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp*, 468 Mich at 469. "[A] contract is ambiguous when two provisions irreconcilably conflict with each other, or when [a term] is equally susceptible to more than a single meaning." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010) (quotation marks and citation omitted; second alteration in original). "[C]ourts may not impose an ambiguity on clear contract language[.]" *Id*.

As GPI notes in support of its interpretation, the Agreement explicitly uses the term "termination" to refer to Mayser's ability to end the Agreement for cause, and to either party's option to end the Agreement during its initial year, but not to non-renewal after the initial year has passed. On this basis, GPI asserts that the commission limitation in § 8(a) does not apply to Mayser's decision not to renew the Agreement under § 15. However, we must construe the terms of an agreement in context, *Hastings Mut Ins Co v Safety Kings, Inc*, 286 Mich App 287, 294; 778 NW2d 275 (2009), and consideration of these concepts in context demonstrates the parties' clear intent that "termination," as used in § 8(a), encompasses any action which serves to the end the Agreement.

First, the term "non-renewal" does not actually appear in the body of the Agreement, and "termination" is not capitalized throughout, nor defined. The informality of the term is further emphasized by the language in § 15 referring to a party's election to end the Agreement during its initial year as "termination" in one sentence and "cancellation" in the next.[9] In addition, §§ 14 and 15, the provisions which set forth all mechanisms for ending the Agreement, including non-renewal, appear under the broader heading "**BREACH AND TERMINATION**." From the above, it is clear that the parties intended that "termination" be used generally to refer to any affirmative action ending the Agreement.

Moreover, "courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468. Interpreting "termination" to include only termination for cause under § 14 and cancellation of the Agreement during its initial year under § 15 would frustrate the purpose of both § 9 and § 17. Section 9 provides: "[Mayser], at its own expense, shall furnish to [GPI] a reasonable supply of samples and advertising matter to be used by [GPI] in connection with its agency hereunder. Samples are exclusive property of [Mayser] and, on termination of this Agreement, [GPI] shall return them to [Mayser] at [Mayser's] expense." If "termination" does not include non-renewal, the Agreement provides no mechanism for the return of samples in the event that either party elects not to renew. Similarly, GPI would have no protection under the Agreement in the event of non-renewal with respect to past orders as contemplated in § 17, which reads, "In the event of termination, this Agreement shall remain applicable to any orders for products which [GPI] has previously placed and to any other orders which may be executed within sixty (60) days subsequent to the effective date of termination."

In contrast, GPI argues that "if the limitation on commissions in § 8(a) applies equally to termination and non-renewal, it would render the termination-for-cause mechanism of § 14 meaningless" because there would be no consequence for breach of the Agreement. However, unlike § 15, the termination-for-cause provision in § 14 contains no time requirements for notice. In other words, the consequence for breach of the Agreement would be limited notice of termination. Further, the cases cited by GPI for its argument that courts have recognized a distinction between non-renewal and termination do not alter our conclusion. Not only do the federal and unpublished opinions hold no precedential value, *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 414; 761 NW2d 371 (2008); MCR 7.215(C)(1), but the language of an agreement is paramount in contract interpretation, and the agreements in the cases cited, although similar, are not identical to the Agreement at issue.

---

[9] Indeed, § 15 states, in part: "The Agreement shall become effective on the date of its execution and shall remain in full force for a period of one year unless either of the parties hereto has given to the other party written notice of its election to terminate the Agreement upon sixty (60) days' notice, with or without cause. At the end of the original term of one year, in the absence of *cancellation* by either party, the agreement shall automatically renew from year to year." (Emphasis added.)

Finally, GPI's argument that the trial court went beyond the scope of a proper (C)(8) analysis when it asked GPI to produce the additional documents it alleged impacted the parties' contractual argument, also fails. In support, GPI cites only the general standards for review of a motion under MCR 2.116(C)(8), and ignores the ability of courts to look beyond the pleadings to treat a motion brought under MCR 2.116(C)(8) as a motion testing the factual support for a claim pursuant to MCR 2.116(C)(10). See *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000) ("Although [the] defendants brought their motions for summary disposition pursuant to MCR 2.116(C)(8), the parties and the trial court relied on documentary evidence beyond the pleadings. Therefore, we will treat the motions as having been granted pursuant to MCR 2.116(C)(10) . . . .") And regardless, the trial court relied on the unambiguous language of the Agreement, which formed the basis of GPI's breach of contract claim and was attached to the complaint. See MCR 2.113(F), as amended September 1, 2018, 501 Mich cv (2018).

## B. AMENDMENT OF THE COMPLAINT

GPI also challenges the trial court's denial of its requests for leave to file amended breach of contract and promissory estoppel claims. During the summary disposition hearing, GPI asked to amend its breach of contract claim pursuant to MCR 2.116(I)(5) "[t]o show . . . that there were specific arguments with regard to parts to continue paying well beyond the one year."[10] The court rejected GPI's request, without entertaining either a written motion or proposed amended complaint, after again asking GPI to produce the alleged additional agreements "because the language [in the Agreement] on its face . . . is clear and it's unambiguous and it doesn't require that I go beyond the language in the contract."[11]

However, the court did grant GPI the opportunity to file a motion for leave to amend its promissory estoppel claim. Along with a cursory motion and brief requesting leave to amend, GPI submitted a proposed first amended complaint with an updated promissory estoppel claim, alleging that the parties began a professional relationship in 2002, that on the basis of words or conduct independent of the Agreement, as evidenced by attached e-mails, Mayser made a clear promise that it would pay GPI commissions for the life of the business placed, that this promise induced GPI to act on Mayser's behalf, and that Mayser "breached their promise by failing to continue to pay commissions due Plaintiff at the agreed specific and defined rates until the end of the life of the business placed and/or served." Attached to the proposed amended complaint were the Agreement, non-renewal letter, and commission letter, redacted purchase orders, and the e-mails referenced throughout the promissory estoppel claim.

In response, Mayser asserted that GPI's request to amend its promissory estoppel claim was futile because the promise forming the basis of its claim was neither clear nor definite, as the

---

[10] In so doing, GPI again cited Paragraph 7 of its original complaint to argue that it had specifically pled the existence of additional writings.

[11] Further, the court reasoned that amendment is typically employed where a complaint fails to plead each element of a cause of action, but the court rules contain no such limitation. MCR 2.116(I)(5); MCR 2.118(A).

e-mails attached contained only proposals for a new commission schedule in an effort to renegotiate the parties' Agreement.[12] Ultimately, the trial court denied GPI's motion for leave to amend, concluding that the documents attached to the proposed amended complaint amounted only to negotiations between the parties which cannot form the basis for a promissory estoppel claim.

GPI first argues that the court abused its discretion by refusing to even entertain a motion for leave to amend its breach of contract claim pursuant to MCR 2.116(I)(5), and we agree. We review "a trial court's decision regarding amendment of a complaint pursuant to MCR 2.116(I)(5) for an abuse of discretion." *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003). Under MCR 2.116(I)(5), "[i]f the grounds asserted [for summary disposition] are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5); *Liggett*, 260 Mich App at 138. And MCR 2.118(A)(2) states: "Except as provided in subrule (A)(1), a party may amend a pleading only be leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." A futile amendment is not justified. *Liggett*, 260 Mich App at 138.

In *Liggett*, 260 Mich App at 139, this Court held that "[a] determination of futility must be based on the legal insufficiency of the claim on its face," and "[b]ecause [the] plaintiff had yet to identify the proposed claim, there was no basis for the trial court's determination that it was legally insufficient." Here too, then, the trial court abused its discretion by refusing to even consider a written motion for leave to amend the breach of contract claim or a proposed amended complaint. *Id.* Despite its frustrations over GPI's failure to submit, at the summary disposition hearing, the additional writings it alleged existed, the trial court should have at least allowed GPI to submit a proposed amended breach of contract claim before declaring that such a claim would be futile.[13] Accordingly, we remand to the trial court to give GPI an opportunity to do so.

On the other hand, the court did not abuse its discretion when it denied GPI's motion for leave to amend its promissory estoppel claim, as the proposed amendment would have been futile. "An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *PT Today, Inc v Comm'r of Office of Fin and Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted).

---

[12] Further, at the motion hearing, Mayser argued that the e-mails attached to GPI's proposed amended complaint were one portion of a longer string, in which Mayser explicitly rejected lifetime commissions.

[13] The trial court went back and forth with GPI's counsel throughout the summary disposition hearing about producing the supposed writings GPI alleged altered or modified the parties' Agreement, but GPI was under no such obligation at a (C)(8) hearing. See *Dalley*, 287 Mich App at 304-305.

GPI's proposed amendment was futile on its face because it failed to state a valid claim for promissory estoppel. To state a claim for promissory estoppel, a plaintiff must allege "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008). "The promise must be definite and clear, and the reliance on it must be reasonable." *Id*. Here, the e-mails attached to the proposed amended complaint, which GPI included in support of its claim for promissory estoppel, contain no clear or definite promise on which GPI could reasonably have relied to pay GPI commissions for the life of the products sold. In fact, from the e-mails, it appears the parties were simply negotiating a new agreement, which never came to fruition as evidenced by Mayser's notice of non-renewal on August 25, 2014. For example, one of the e-mails sent by a Mayser representative which was attached to, and specifically cited in the proposed first amended complaint, does mention commissions "until the end of lifetime," but that same e-mail labels the commissions suggested within as "ideas" and asks for comments from GPI. We decline to consider such an exchange a clear and definite promise on which GPI could have reasonably relied.

Citing MCR 2.111 and MCR 2.112, GPI asserts that neither court rule requires the attachment of documents in support of a promissory estoppel claim, and that the court should not have considered documentary evidence to make its decision regarding its motion to amend because "[i]t is simply not within a court's province to make factual decisions about the persuasive quality of evidence on a motion brought under MCR 2.116(C)(8)." However, the motion challenged by GPI is a motion to file an amended complaint, not a motion for summary disposition pursuant to MCR 2.116(C)(8), and the e-mails were not simply attached to the proposed amended complaint, but were incorporated throughout the body of the complaint itself, both by citation and transcription. Thus, the insufficiencies in GPI's claim are apparent on the face of the proposed first amended complaint.

We affirm the trial court's orders granting partial summary disposition and denying GPI's motion to file an amended complaint with regard to its promissory estoppel claim, but vacate the summary disposition order to the extent it precluded GPI from filing a motion to amend the breach of contract claim, and remand to give GPI the opportunity to do so. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan