*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

POWER FUEL, LLC and STAR FUEL, LLC,

        Plaintiffs-Appellants,

v

BEYDOUN INVESTMENT, LLC, A&H FILL-UP, INC, and MIDFIELD GAS & OIL, INC,

        Defendants-Appellees,

and

OXFORD BANK, BANK OF BIRMINGHAM, and COMERICA BANK,

        Defendants.

UNPUBLISHED
March 16, 2023

No. 359197
Wayne Circuit Court
LC No. 19-003217-CB

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In this breach of contract action, plaintiffs, Power Fuel, LLC, and Star Fuel, LLC, appeal as of right the trial court's October 20, 2021 opinion and order denying summary disposition to plaintiffs and granting summary disposition under MCR 2.116(C)(10) to defendants, Beydoun Investment, LLC, A & H Fill-Up, Inc., and Midfield Gas & Oil, Inc. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

This action arises from plaintiffs' purchase of two Detroit gas stations, located at 17776 Grand River Avenue (Property #1) and 17785 Grand River (Property #2), from defendants. The purchase of the properties was preceded by plaintiffs' decision to lease the properties. Before leasing the properties, plaintiffs negotiated with defendants over the lease terms. Plaintiffs' owner, Sultan Hassan and defendants' owner, Abdoul Beydoun, met seven or eight times to discuss the

-1-

lease agreements. On appeal, Hassan states that one of his main concerns about leasing the properties pertained to the potential for either of them to be encumbered by a fuel use restriction, which would require both gas stations to purchase gasoline from a specific supplier for a set period of time. According to Hassan, Beydoun specifically advised him that Property #1 had two years left on a fuel supply contract with Armada Gas & Oil Co. Beydoun further stated that Property #2 was not encumbered by a fuel use restriction and that he typically obtained gasoline as needed from Knight Enterprises, Inc., and Bazco Oil, Inc.

On May 8, 2018, believing that the properties were at most encumbered by one short-term fuel use restriction, Hassan signed a lease agreement for each property. The lease agreements indicated that both properties were encumbered by fuel use restrictions: the lease agreement for Property #1 indicated that Hassan, as the lessee of the property, could only purchase fuel from Armada Gas & Oil Co. for an unspecified amount of time, and the lease agreement for Property #2 indicated that Hassan could only purchase fuel from Knight Enterprises, Inc., again for an unspecified amount of time, but mentioned nothing else about fuel use restrictions.

Each lease agreement also contained an identical right of first refusal provision that would allow Hassan to purchase the properties outright under certain conditions. The provision in each lease agreement stated, in relevant part:

> 2.3 <u>First Right of Opportunity.</u> If at any time during the Lease Term the Landlord decides to market the Leased Premise[s] for sale, Landlord shall advise Tenant in writing of its intent to market the Leased Premises. Tenant shall have thirty (30) days from the date of receipt of such notice to purchase the Leased Premises and the property located at 17785 Grand River, Detroit, Michigan 48227 for a combined purchase price of Two Million Seven Hundred Thousand Dollars and 00/100 ($2,700,000.00). Tenant must close on both the Leased Premises and 17785 Grand River, Detroit, Michigan 48227 simultaneously. The sale shall be consummated via a land contract with a Twenty-Five (25%) down payment, interest at a rate equal to six and one half (6 1/2%) per annum, monthly payments not less than Twenty Thousand Dollars and 00/100, and upon such other terms as may be agreed to between Landlord and Tenant. The Leased Premises shall be sold to Tenant "as/is" without any representation whatsoever from Landlord. After such thirty (30) day period (if Landlord and Tenant have not executed a Purchase Agreement), Landlord may market the Leased Premises to third party prospective buyers without regard to any right(s) to purchase the Leased Premises by Tenant. In the event that Tenant fails to purchase the Leased Premises and 17785 Grand River, Detroit, Michigan 48227 then Tenant shall pay Landlord the sum of Fifty Thousand Dollars and 00/100 ($50,000.00.) In the event that Landlord elects not to offer the Leased Premises and 17785 Grand River, Detroit, Michigan 48227 for sale to the Tenant, then at the conclusion of the Lease Term, Landlord shall pay Tenant the sum of Fifty Thousand Dollars and 00/100 ($50,000.00.)

Also of note is Section 19.2, which is a provision in both lease agreements stating that the agreements supersede all other statements or discussions made between the parties:

19.2 Entire Agreement. This Lease, the Exhibits and Appendices, if any, attached hereto and forming a part hereof, supersede all prior and contemporaneous negotiations, discussions and agreements between the Landlord and Tenant concerning the Leased Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than are herein set forth. No alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party.

On May 15, 2018, the parties executed a combined "Addendum to Lease," which applied to both properties. The handwritten addendum amended the lease terms regarding the right of first refusal and the general right to purchase the properties. The addendum stated, in relevant part:

1. Tenant shall, at any time within the first seven (7) months of the lease term (from May 15, 2018 thru [sic] December 31, 2018), have the right to purchase the properties pursuant to the following modified terms and conditions contained in paragraph 2.3 (First Right of Opportunity) provided tenants pay the required down payment of $600,000 (six hundred thousand dollars) of the modified price of (two million eight hundred thousand) $2.8 million dollars US.

On September 28, 2018, Hassan gave Beydoun notice that he intended to exercise the right to purchase the properties. On October 17, 2018, after receiving notice of Hassan's intent to purchase the properties, but before closing could take place, Beydoun executed a 15-year fuel use restriction on both properties in favor of defendant, Midfield Gas & Oil, LLC, another company he owned. According to Beydoun, he repeatedly told Hassan that he intended to record a fuel use restriction on the properties. Hassan refused to sign a purchase agreement that included the fuel use restriction, and had his attorney revise the purchase agreement and remove any terms pertaining to the restriction. Beydoun refused to sell the properties to Hassan without the fuel use restriction, so Hassan declined to complete the sale.

On March 6, 2019, plaintiffs filed suit against defendants, alleging breach of contract and bringing a quiet title claim. On March 15, 2019, plaintiffs filed an amended complaint, which also alleged breach of contract and raised a quiet title claim.[1]

On April 1, 2019, defendants filed a motion for summary disposition under MCR 2.116(C)(10). In the motion, defendants argued that plaintiffs did not negotiate in good faith, failed to close the deal before the option to purchase period expired, and were solely

---

[1] The original and amended complaints are materially identical; the only major difference is that the original complaint names Oxford Bank and Comerica Bank as defendants, along with the defendants named in the suit on appeal to this Court. The amended complaint names Oxford Bank and Bank of Birmingham as defendants, again alongside the defendants who are participating on appeal here. Oxford Bank, Comerica Bank, and the Bank of Birmingham have been dismissed from the case, and do not participate in this appeal.

responsible for the failed real estate transaction. Defendants asked the trial court to dismiss plaintiffs' complaint with prejudice.

On May 6, 2019, plaintiffs filed an answer to defendants' motion for summary disposition, asking for relief under MCR 2.116(I)(2). Plaintiffs argued that defendants were responsible for the failure to close on the sale because Beydoun surreptitiously recorded a 15-year fuel use restriction in favor of one of his own companies and added the restriction to the purchase documents. Plaintiffs asked the trial court to grant them relief and determine that the 15-year fuel use restriction be removed, both from the title to the property and as a condition to the purchase agreement.

On May 17, 2021, plaintiffs filed a motion for summary disposition under MCR 2.116(C)(10). Plaintiffs argued that the parties clearly intended for the option to purchase provision in the addendum to the lease agreements to be read in conjunction with the purchase terms set forth in Section 2.3 of the lease agreements, meaning that plaintiffs would only be bound by the terms included in the addendum and Section 2.3, in which there was no mention of the 15-year fuel use restriction executed in favor of Midfield Gas & Oil, Inc. Plaintiffs also contended that defendants' actions gave rise to plaintiffs' right to invoke the frustration-of-purpose doctrine, which is used as an excuse for nonperformance of a contractual obligation. Plaintiffs stated that for the frustration-of-purpose doctrine to apply, a party must show that (1) the contract is partially executory, (2) both parties must have known the frustrated party's purpose in making the contract when the contract was made, and (3) the purpose of the contract must have been frustrated by an event not attributable to the frustrated party and not necessarily foreseeable when the contract was made. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146 (2007). Plaintiffs stated that by accepting the option to purchase, they created a contract with defendants that was partially executory, and that defendants were aware at all times that plaintiffs did not wish to purchase properties that were encumbered by fuel use restrictions. Finally, plaintiffs stated that defendants' decision to record a 15-year fuel use restriction after plaintiffs gave notice of their intent to exercise the option to purchase the properties was clearly an unforeseeable event for which plaintiffs could not be held accountable. Plaintiffs asked the court to specifically hold that the only terms to which they could be held are those stated in the lease agreement and the addendum to the lease agreement, and to quiet title to both properties by declaring the fuel use restrictions void.

In response, defendants argued that plaintiffs knew that both properties were already encumbered by fuel use restrictions. Defendants further contended that there was no meeting of the minds between the parties and that they were not required to sell the properties to plaintiffs. Finally, defendants challenged plaintiffs' request to quiet title to both properties, contending that plaintiffs had not stated a claim for which relief could be granted because they did not have a legal or equitable ownership interest in either property.

A hearing was held on the motion, and the parties largely argued consistent with their briefs. On October 20, 2021, the trial court issued an opinion and order granting summary disposition to defendants and denying summary disposition to plaintiffs. Regarding the breach of contract argument, the trial court focused on plaintiffs' claim that the frustration-of-purpose doctrine applied, noting that the doctrine most often applied where a change in circumstances made the contract worthless to one of the parties, or where the frustrated party assumed that the

-4-

"frustrating event" would never happen. The trial court did not find plaintiffs' evidence in support of the frustration-of-purpose argument very compelling, noting that plaintiffs had presented little more than Hassan's unfounded assertion that it was important to him that the properties be unencumbered. The trial court also found that plaintiffs failed to present any evidence to show that the properties were worthless to them if the fuel use restriction remained intact. The court concluded that plaintiffs' breach-of-contract claim failed because plaintiffs did not present sufficient evidence to show that defendants frustrated the purpose of the contract. Regarding the quiet title claim, the trial court found that the claim failed because plaintiffs failed to present evidence that the fuel use restriction was invalid or that defendants breached the contract by recording the fuel use restriction.

This appeal followed.

## II. STANDARD OF REVIEW

Plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(10). This Court reviews the grant or denial of a motion for summary disposition de novo. *Value, Inc v Dep't of Treasury*, 320 Mich App 571, 576; 907 NW2d 872 (2017). "A motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). A genuine issue of material fact " 'exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Cox v Hartman*, 322 Mich App 292, 299; 911 NW2d 219 (2017) (citation omitted). We review de novo questions concerning the proper interpretation of a contract. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503–504; 741 NW2d 539 (2007). A trial court's ruling on an action to quiet title is also reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021).

## III. BREACH OF CONTRACT

Plaintiffs argue that their exercise of the option to purchase offered by defendants created a contractual obligation between the parties, and that they have presented sufficient evidence to show that defendants breached and frustrated the purpose of the contract by recording a fuel use restriction on the properties without informing plaintiffs beforehand. We agree.

A claim of breach of contract requires a plaintiff to first demonstrate that a valid contract existed. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement and (5) mutuality of obligation." *Id.* at 101. Mutuality of agreement, or mutuality of assent, means there must be a "meeting of the minds" between the parties on the essential terms of the agreement. *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014). Leases, like the one at issue here, are interpreted according to the same principles governing the interpretation of contracts. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). To set forth a prima facie showing of breach of contract, the party asserting the breach must show by a preponderance of the evidence that (1) a contract existed, (2) the other party breached the contract, and (3) the party asserting the breach incurred damages as a result of the breach. *Id.*

Plaintiffs first ask the Court to consider whether they had a valid option to purchase and whether they properly exercised that option, thus creating a contractual obligation between the parties. Defendants do not dispute that the option to purchase existed and that a contract was formed when plaintiffs exercised the option to purchase. We take no issue with the parties' conclusions on this matter. "An option is basically an agreement by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time." *In re Smith Trust*, 480 Mich at 25. It is clear that an option to purchase existed and that plaintiffs exercised the option, meaning a contract existed between the parties.

Regarding breach of the contract, plaintiffs first argue that the fuel use restriction could not be included as a condition of the sale because it was not set forth in the written lease agreements or lease addendum. Instead, plaintiffs say that, according to Section 2.3 of the lease agreements, the parties could only be bound to the explicit terms of the lease and other terms "*agreed to* between Landlord and Tenant." In other words, although the subparagraph stating that the parties must agree to other terms before the sale can be completed may be a condition precedent to the sale, the lease agreements and lease addendum do not state that plaintiffs must agree to allow defendants to record a new fuel use restriction on the property as a condition of the sale.

Defendants appear to agree that the parties may only be bound by the terms of the lease agreements and the lease addendum. To that end, defendants claim that Section 19.2 of the lease agreements prohibits the introduction of extrinsic evidence that could help provide support and context for the parties' positions. Section 19.2 is a merger clause, and its presence in the lease agreements "prohibit[s] consideration of parol evidence by nullifying agreements not included in the written agreement." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 507 n 14; 579 NW2d 411 (1998). Thus, all extrinsic evidence of discussions or agreements about the property may not be considered in evaluating whether the contract was breached, including Hassan's statements that he expected the properties to be sold to him unencumbered by a long-term fuel use restriction. Accordingly, any and all terms—including any conditions precedent to the sale—must be included in the text of the lease agreements and the lease addendum.

This Court has held that "courts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language in the contract." *Real Estate One v Heller*, 272 Mich App 174, 179; 724 NW2d 738 (2006) (quotation marks and citations omitted). Defendants contend that plaintiffs' acceptance of the 15-year fuel use restriction is a condition precedent to their agreement to sell the property; if plaintiffs refuse, defendants claim that they have forfeited the option and that the property can be offered to other buyers. However, "[u]nless the contract language itself makes clear that the parties intended a term to be a condition precedent, this Court will not read such a requirement into the contract." *Id*. Since the 15-year-fuel use restriction is not mentioned anywhere in the lease agreements or the lease addendum, and was only executed after plaintiffs notified defendants that they were interested in purchasing the properties, it cannot be considered a condition precedent to the sale or an element of the contract between the parties.

Defendants further claim that because the lease agreements contain a clause indicating that the option to purchase required plaintiffs to accept the properties "as/is without any representation whatsoever from Landlord," plaintiffs were obligated to acquiesce to the 15-year fuel use restriction recorded in favor of defendant, Midfield Oil & Gas Co., or otherwise forfeit the option

to purchase entirely. We find this argument unpersuasive. As far as plaintiffs were concerned, the lease agreements stated that the properties were at most encumbered by fuel use restrictions in favor of Armada Gas & Oil Co., and Knight Enterprises, LLC. At no point were plaintiffs made aware that defendants intended for the "as/is" clause in the lease agreements to obligate plaintiffs to accept a new 15-year fuel use restriction on both properties; thus, again, it cannot be deemed an element of the contract between the parties.

Plaintiffs also claim frustration-of-purpose in making the contract. "The frustration-of-purpose doctrine provides an excuse for nonperformance of a contractual obligation." *Rooyaker & Sitz, PLLC*, 276 Mich App at 159. The doctrine is typically asserted by defendants who are seeking to avoid performing a contractual obligation, but it is not exclusively used in that context. Broadly, "the doctrine is asserted where a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract." *Id*. (quotation marks and citations omitted). For the frustration-of-purpose doctrine to apply, the moving party must meet the following conditions:

> (1) the contract must be at least partially executory; (2) the frustrated party's purpose in making the contract must have been known to both parties when the contract was made; (3) this purpose must have been basically frustrated by an event not reasonably foreseeable at the time the contract was made, the occurrence of which has not been due to the fault of the frustrated party and the risk of which was not assumed by him. [*Id*. at 159-160; quoting *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 134-135; 676 NW2d 633 (2003).]

"The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract." *Liggett Restaurant Group, Inc*, 260 Mich App at 135, quoting 2 Restatement Contracts, § 265, comment a, p 335. Additionally, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Id*.

There is no evident dispute that the contract was partially executory, so plaintiffs have met the first prong of the test. As to the second prong, defendants claim that plaintiffs' alleged purpose in entering the contract—to purchase the properties free of any encumbrances—was unknown to them. This is a close issue. Defendants were made aware of plaintiffs' concerns about fuel use restrictions, as Hassan asked about any restrictions on the properties beforehand and was informed by Beydoun about the current fuel use restrictions on the properties. Hassan made no secret of his concern about fuel use restrictions, such that Beydoun certainly could not claim complete ignorance of the matter. Thus, we find that both parties were aware of plaintiffs' purpose in making the contract—to purchase the properties without any new restrictions or encumbrances. Finally, as to whether the event at issue was foreseeable "at the time the contract was made," *Liggett Restaurant Group, Inc*, 260 Mich App at 134-135, we find that it was not. There is no evidence that plaintiffs had knowledge of the new fuel use restriction before it was recorded, and in any event, the fuel use restriction was not recorded until after plaintiffs notified defendants of their decision to exercise the option to purchase. This suggests that plaintiffs could not have been aware of the event, which had not yet come to pass. Consequently, plaintiffs cannot be said to have assumed the risk that defendants would record another fuel use restriction before the sale was complete.

For these reasons, we conclude that plaintiffs have sufficiently demonstrated that they were entitled to summary disposition under MCR 2.116(C)(10) on their breach-of-contract claim. There is no material issue of fact that defendants breached the contract with plaintiffs. Defendants frustrated the purpose of the contract altogether by recording a new fuel use restriction and then attempting to force plaintiffs to purchase the encumbered properties, despite the fact that the new fuel use restriction was not an element of the parties' contract. Accordingly, the trial court erred by granting summary disposition to defendants in relation to the breach-of-contract claim.

## IV. QUIET TITLE

Plaintiffs next argue that they asserted a valid claim to quiet title to both properties. We disagree.

The purpose of a quiet title action is to determine the right of title among parties who claim an interest in real property. *Beach v Twp of Lima*, 489 Mich 99, 102; 802 NW2d 1 (2011). The statute that governs actions to quiet title, MCL 600.2932, provides:

> (1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

Although plaintiffs do not own and are not in possession of the properties in question, they claim an equitable interest in the property based on the option to purchase. Plaintiffs ask that the fuel use restriction be removed from the deeds to both properties before the purchase takes place. However, plaintiffs present no support for the notion that an option to purchase, which was never fully executed, gives them an interest in the property, other than the broad assertion that MCL 600.2932 provides a sufficient basis for the quiet title claim. "[I]t is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). Because plaintiffs have not adequately supported their claim that the option to purchase grants them an interest in the property, we affirm the trial court's ruling on the quiet title issue.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Anica Letica

-8-